**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 15-4363**

───────────

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

MARTIN BARCENAS-YANEZ, a/k/a Juan Yanaee Cruz, a/k/a Ricardo
Rocha-Gusman,

Defendant - Appellant.

───────────

Appeal from the United States District Court for the Western
District of North Carolina, at Charlotte.   Robert J. Conrad,
Jr., District Judge.   (3:14-cr-00005-RJC-1)

───────────

Argued:  May 11, 2016                    Decided:  June 21, 2016

───────────

Before MOTZ and FLOYD, Circuit Judges, and DAVIS, Senior Circuit
Judge.

───────────

Vacated and remanded by published opinion.  Senior Judge Davis
wrote the opinion, in which Judge Motz and Judge Floyd joined.

───────────

**ARGUED:** Joshua B. Carpenter, FEDERAL DEFENDERS OF WESTERN NORTH
CAROLINA, INC., Asheville, North Carolina, for Appellant.
Anthony Joseph Enright, OFFICE OF THE UNITED STATES ATTORNEY,
Charlotte, North Carolina, for Appellee.  **ON BRIEF:** Ross Hall
Richardson, Executive Director, FEDERAL DEFENDERS OF WESTERN
NORTH CAROLINA, INC., Charlotte, North Carolina, for Appellant.
Jill Westmoreland Rose, United States Attorney, OFFICE OF THE
UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

───────────

DAVIS, Senior Circuit Judge:

Having pled guilty to illegally reentering the United States in violation of 8 U.S.C. § 1326, Appellant Martin Barcenas-Yanez appeals the 60-month sentence imposed by the district court. The length of the sentence was driven in significant part by the district court's conclusion that Barcenas-Yanez's 1997 aggravated assault conviction under Texas Penal Code § 22.02(a) constituted a predicate "crime of violence" under the reentry sentencing guideline, U.S.S.G. § 2L1.2(b)(1)(A). We hold, to the contrary, that a conviction under § 22.02(a) is not categorically a crime of violence. We therefore vacate the judgment and remand for resentencing.

Barcenas-Yanez, a native and citizen of Mexico, illegally entered the United States during the early 1990s and spent the majority of the decade living and working in Texas. While in Texas, Barcenas-Yanez was convicted of several state offenses including, of relevance to the present appeal, aggravated assault with a deadly weapon in violation of Texas Penal Code § 22.02(a)(2), stemming from a bar fight.

Under the terms of the Texas statute relevant to this appeal, Barcenas-Yanez committed the Texas offense of aggravated assault in that he committed "simple assault" when he "intentionally, knowingly, or recklessly cause[d] bodily injury to another," Tex. Penal Code § 22.01(a)(1), and that simple

2

assault offense was elevated to aggravated assault because, during the assault, he "use[d] or exhibit[ed] a deadly weapon." § 22.02(a)(2).[1] After serving three years in state prison, Barcenas-Yanez was deported to Mexico. As early as 2003, however, he illegally reentered the United States, making his way to North Carolina.

In 2006, Barcenas-Yanez was convicted of driving under the influence and assault in a North Carolina state court. In December 2013, while Barcenas-Yanez was serving a term of probation, the Department of Homeland Security discovered his presence in North Carolina. A grand jury returned the instant indictment charging him with knowingly and unlawfully reentering the United States while under a preexisting order of deportation in violation of 8 U.S.C. § 1326(a) and (b)(2).

In due course, Barcenas-Yanez pled guilty as charged in the indictment. In preparation for sentencing, a probation officer prepared a Presentence Investigation Report ("PSR"), which concluded that, because Barcenas-Yanez "was previously deported after being convicted of a crime of violence, Aggravated Assault with a Deadly Weapon," his offense level should be increased by

---

[1] The actual charging document alleged that Barcenas-Yanez "intentionally and knowingly cause[d] serious bodily injury to [the victim] by beating him about the face and head with a cue stick, that by the manner of its use and intended use was capable of causing death and serious bodily injury." J.A. 46.

3

16 levels pursuant to U.S.S.G. § 2L1.2(b)(1)(A).  With the 16-level enhancement, Barcenas-Yanez's advisory guidelines range was 77 to 96 months' imprisonment.

Barcenas-Yanez objected to the PSR's conclusion that his 1997 conviction for aggravated assault qualified as a "crime of violence" for purposes of U.S.S.G. § 2L1.2(b)(1)(A), arguing that, because the mens rea element of Texas's aggravated assault statute sweeps more broadly than that of the "generic" definition of aggravated assault (by permitting a conviction for "reckless[ly] caus[ing] bodily injury to another"), a conviction under § 22.02(a) does not categorically constitute a crime of violence.  The government did not oppose the objection, and the probation officer revised the PSR, replacing the recommended 16-level enhancement with a recommended 4-level enhancement under U.S.S.G. § 2L1.2(b)(1)(D).  Under the new calculation, the advisory guidelines range was significantly reduced to 24 to 30 months; the government did not object to the revised PSR.

At the sentencing hearing, somewhat to the parties' surprise, the district court stated that it had "a hard time figuring out why a 16-level adjustment" was not appropriate. J.A. 28.  Relying on an unpublished Tenth Circuit decision, United States v. Arellano-Sandoval, 506 F. App'x 827 (10th Cir. 2013), and its own determination that § 22.02(a) is divisible, the district court applied the modified categorical approach and

4

concluded that, because Barcenas-Yanez was specifically charged with "intentionally and knowingly caus[ing] serious bodily injury," the applicable elements of § 22.02(a) matched those of the generic aggravated assault offense enumerated as a "crime of violence" under U.S.S.G. § 2L1.2 cmt. n. 1(B)(iii). J.A. 27–35; see id. at 31 (observing that the charging document in the 1997 case "seems to read reckless right out of the conviction"). After determining that the 16-level crime of violence enhancement was appropriate, the district court calculated Barcenas-Yanez's advisory guidelines range at 77 to 96 months. Ultimately, the court sentenced Barcenas-Yanez to a variant sentence of 60 months' imprisonment.

Barcenas-Yanez filed this timely appeal, contending that the district court erred in using the modified categorical approach to determine that his 1997 conviction for aggravated assault under § 22.02(a) constituted a crime of violence for purposes of U.S.S.G. § 2L1.2(b)(1)(A). We review de novo whether a district court erred in determining that a defendant's prior conviction qualifies as a crime of violence for purposes of the reentry guideline. United States v. Aparicio-Soria, 740 F.3d 152, 154 (4th Cir. 2014) (en banc).

U.S. Sentencing Guideline § 2L1.2, the reentry guideline, "advises federal district judges to increase by twelve or sixteen the offense level of a defendant convicted of unlawfully

5

entering or remaining in the United States if that defendant has a prior felony conviction for a 'crime of violence.'" Id. (quoting U.S.S.G. § 2L1.2(b)(1)(A)). The commentary to the reentry guideline defines "crime of violence" as certain enumerated offenses, such as "[m]urder, manslaughter, kidnapping, [and] aggravated assault," or "any other offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 2L1.2 cmt. n. 1(B)(iii).

At sentencing, the district court correctly determined that a violation of § 22.02(a) could potentially qualify as a crime of violence because "aggravated assault" is one of the enumerated offenses listed in the commentary to the reentry guideline. Consequently, the court correctly viewed its task as determining whether "the elements of [a § 22.02(a) violation] 'correspond[] in substance' to" those of the generic definition of aggravated assault. United States v. Cabrera-Umanzor, 728 F.3d 347, 350 (4th Cir. 2013) (second alteration in original) (quoting Taylor v. United States, 495 U.S. 575, 599 (1990)).

In so doing, courts must look exclusively to "the elements of the prior offense rather than the conduct underlying the" particular conviction. Id. This categorical analysis is tweaked, however, if the statute of conviction is "divisible"-- meaning that the statute's elements are set out in the

6

alternative, providing for multiple versions of the same crime. Id. In the case of a divisible statute, the court employs a modified categorical approach and is permitted to "consult certain approved 'extra-statutory materials . . . to determine which statutory phrase was the basis for the conviction.'" Id. (quoting Descamps v. United States, 133 S. Ct. 2276, 2285 (2013)). The Supreme Court has explained that the modified categorical approach "serves a limited function" and that the approved extra-statutory materials, or Shepard documents, may only be consulted when a statute "list[s] potential offense elements in the alternative, render[ing] opaque which element played a part in the defendant's conviction" and not when the statute merely defines the offense broadly. Id. (quoting Descamps, 133 S. Ct. at 2283).

Here, like the district court, the parties first focus on whether the inclusion of recklessness as a mental state sufficient to satisfy § 22.02(a)'s mens rea element takes the statute out of the ambit of the "generic" aggravated assault offense, which is a categorical crime of violence. We think that the district court and the parties are correct on that score; inclusion of a mere reckless state of mind renders the statute broader than the generic offense. See United States v. Garcia-Jimenez, 807 F.3d 1079, 1086 (9th Cir. 2015) ("That a substantial majority of U.S. jurisdictions require more than

7

extreme indifference recklessness to commit aggravated assault is a compelling indication that the federal generic definition of aggravated assault also requires more than that mental state."). Therefore, and again as the district court correctly perceived, the dispositive question becomes whether the Texas legislature, in setting out alternative means of satisfying the mens rea element of the Texas statute, rendered the statute divisible such that the state law can be said to have created two offenses, one involving a reckless mens rea, the other involving a knowing or intentional mens rea. We hold, applying settled Circuit precedent, that the answer to this latter query is "no."

Texas law prohibits simple and aggravated assault. Tex. Penal Code §§ 22.01, 22.02. As relevant here,[2] a person commits simple "bodily injury" assault if he "intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse." § 22.01(a)(1). A violation of § 22.01(a)(1) generally qualifies as a Class A misdemeanor. § 22.01(b). On the other hand, a person commits aggravated assault, a felony, § 22.02(b), if he commits simple assault, as defined in § 22.01,

_____

[2] The Texas Penal Code also prohibits two other "distinct assaultive crimes," Landrian v. State, 268 S.W.3d 532, 536 (Tex. Crim. App. 2008), but neither is relevant to the present appeal, § 22.01(a)(2)–(3).

8

and "uses or exhibits a deadly weapon during the commission of the assault," § 22.02(a)(2).

In arguing that the Texas statute is divisible, the government contends, unremarkably, that we may consider the text of the statute, together with state court opinions interpreting the statute. But the government goes much further to argue that we may also consider, in light of state court practice, any charging documents it is able to obtain from the state courts, such as the charging document relied on by the district court in this case. In still another giant leap, the government even suggested at oral argument that we may take account of the description of charging documents contained in unrelated state court opinions.[3] We decline the government's invitation to embark on such a journey, for we have already settled on our preferred path to divisibility determinations.

Indeed, we have explained this Circuit's approach to divisibility analysis with unmistakable clarity:

> A statute is indivisible when the jury need not agree on anything past the fact that the statute was violated. Any statutory phrase that—explicitly or implicitly—refers to multiple, alternative means of

---

[3] At oral argument the government acknowledged that under its approach to divisibility analysis, a statute would sometimes be deemed divisible and sometimes not, depending on how a local prosecutor elected to word the charges. We find little in such a rule to commend itself to us, even were we free to adopt it, which we are not.

9

commission must still be regarded as indivisible if the jurors need not agree on which method of committing the offense the defendant used. Thus, mere use of the disjunctive "or" in the definition of a crime does not automatically render it divisible. Only when [the] law requires that in order to convict the defendant the jury must unanimously agree that he committed a particular substantive offense contained within the disjunctively worded statute are we able to conclude that the statute contains alternative <u>elements</u> and not alternative <u>means</u>.

<u>United States v. Fuertes</u>, 805 F.3d 485, 498 (4th Cir. 2015) (alteration in original) (citations and internal quotation marks omitted); <u>see also</u> <u>United States v. Vinson</u>, 805 F.3d 120, 125 (4th Cir. 2015) ("[W]hether a statute or criminal offense is divisible depends on the existence of alternate elements and a matching category—that is, the alternate elements must create at least one category or form of an offense that matches up to the elements of the generic federal offense in question."); <u>Cabrera-Umanzor</u>, 728 F.3d at 350 ("Where the statute defines the offense broadly rather than alternatively, the statute is not divisible, and the modified categorical approach simply 'has no role to play.'" (quoting <u>Descamps</u>, 133 S. Ct. at 2285)).

In a holding imbued with an equal measure of unmistakable clarity, the Texas Court of Criminal Appeals has determined that jury unanimity as to mens rea is not required for an aggravated assault conviction under § 22.02(a)(1), (2). <u>Landrian v. State</u>, 268 S.W.3d 532, 537 (Tex. Crim. App. 2008). Accordingly, the Texas aggravated assault offense created in § 22.02(a) is

broader than the federal generic "aggravated assault" offense qualifying under the reentry guideline as supporting an enhanced sentencing range, is not divisible, and therefore cannot support the application of a 16-level enhancement under the reentry guideline. In so holding, we respectfully disagree with the contrary, pre-Descamps opinion (and its progeny) of the Fifth Circuit. See United States v. Guillen-Alvarez, 489 F.3d 197, 199 (5th Cir. 2007).

We acknowledge that it is understandably tempting to examine Shepard-approved documents earlier rather than later in the sentencing process. As this case demonstrates, however, when such documents are examined too early, a risk arises that the divisibility analysis required under Descamps and our Circuit precedent may be skewed. It should be clear that the modified categorical approach may not be employed to determine whether the modified categorical approach may be employed.[4]

VACATED AND REMANDED

---

[4] We have fully considered and find no merit in the government's alternative arguments that (1) a § 22.02(a) conviction for aggravated assault constitutes a categorical crime of violence under the force clause of the reentry guideline and (2) even with a reckless mens rea element, violation of the Texas statute constitutes a crime of violence.

11