# United States Court of Appeals

## For the Eighth Circuit

_____

No. 17-3034

_____

United States of America

*Plaintiff* - Appellee

v.

Leland Thomas Schneider

*Defendant* - Appellant

_____

Appeal from United States District Court
for the District of North Dakota - Fargo

_____

Submitted: May 18, 2018
Filed: September 28, 2018

_____

Before BENTON, KELLY, and STRAS, Circuit Judges.

_____

STRAS, Circuit Judge.

We consider whether "willful" aggravated assault under North Dakota law qualifies as a "crime of violence" under the United States Sentencing Guidelines. We conclude that it does not and accordingly vacate and remand for resentencing.

## I.

In 2012, Leland Schneider pleaded guilty to felony aggravated assault in North Dakota state court. The conviction arose from a violent domestic dispute in which Schneider pinned down his then-girlfriend and placed his forearm over her throat. When she tried to flee to safety, he kicked the windshield of her car until it broke free, drove off with their two-year-old child, and used the child as a human shield after police officers caught up with him.

The events underlying this case began several years later, when a patrol officer stopped Schneider for a traffic violation and discovered a loaded shotgun in his truck. Not long after, Schneider reported a burglary of his home and listed five boxes of ammunition among the missing items. After these two incidents, the federal government charged him with possessing a firearm and ammunition as a felon. *See* 18 U.S.C. §§ 922(g)(1), 924(a)(2). Schneider pleaded guilty.

The Sentencing Guidelines set a higher base offense level for a felon-in-possession who has a previous conviction for a "crime of violence." *See* U.S.S.G. § 2K2.1(a)(4)(A). At the government's urging, the district court found that Schneider's aggravated-assault conviction qualified as a crime of violence, which increased his recommended Guidelines range. The court sentenced him to a thirty-month prison term. Schneider argued at sentencing that his conviction was not a crime of violence, and he raises the same argument on appeal.

-2-

II.

Under the Guidelines, a "'crime of violence' means any offense under federal or state law" that is "punishable by imprisonment for a term exceeding one year" and that either:

(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

(2) is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c).

U.S.S.G. § 4B1.2(a). We will refer to subparagraph (1) as the "force clause" and to subparagraph (2) as the "enumerated-offenses clause." According to the government, Schneider's aggravated-assault conviction satisfies both clauses. Our review is de novo. *See United States v. Fields*, 863 F.3d 1012, 1013 (8th Cir. 2017).

A.

Under the force clause, our task is to determine whether North Dakota's aggravated-assault statute has "as an element the use, attempted use, or threatened use of physical force." U.S.S.G. § 4B1.2(a)(1). To carry out this task, we analyze the legal definition of Schneider's crime, not his actual acts. The inquiry is straightforward when the statute creates a single crime by listing a single set of elements—"the things the prosecution must prove to sustain a conviction." *Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016) (internal quotation marks and citation omitted). We examine those elements and ask whether only conduct involving physical force can satisfy them. *See, e.g.*, *United States v. Craig*, 630 F.3d 717, 723–24 (8th Cir. 2011). If the answer is yes, the defendant's crime has a

-3-

physical-force element. If no, it does not. Because this analysis turns on the abstract requirements for a conviction, rather than the defendant's actual conduct, the Supreme Court has named it "the categorical approach." *Mathis*, 136 S. Ct. at 2248.

Not all statutes are so simple. Some, often referred to as "divisible" statutes, have a more complicated structure. *See id.* at 2249. They define multiple crimes by listing more than one set of elements. *Id.* When confronting such a law, we first identify the offense of conviction among the possible alternatives. *United States v. McGee*, 890 F.3d 730, 735-36 (8th Cir. 2018). We narrow down the possibilities using a limited set of documents, known as *Shepard* documents. *See generally Shepard v. United States*, 544 U.S. 13, 26 (2005) (listing the acceptable documents, which include "the charging document, the terms of a plea agreement or transcript of [the plea] colloquy[,] . . . [or] some comparable judicial record"). For example, a court might peek at a charging instrument to see if it lists the particular form of assault to which the defendant pleaded guilty. *See United States v. Vinton*, 631 F.3d 476, 485–86 (8th Cir. 2011). After identifying the crime, we ascertain its elements and then, as before, ask whether only conduct involving physical force can satisfy them. *See United States v. Ossana*, 638 F.3d 895, 899–900 (8th Cir. 2011). And, again as before, if the answer is yes, the defendant's crime has a physical-force element. The Supreme Court has labeled this process as "the modified categorical approach." *Mathis*, 136 S. Ct. at 2249.

The parties agree that North Dakota's aggravated-assault statute defines multiple crimes. It provides that "a person is guilty" if he:

    a. Willfully causes serious bodily injury to another human being;

    b. Knowingly causes bodily injury or substantial bodily injury to another human being with a dangerous weapon or other weapon, the possession

-4-

of which under the circumstances indicates an intent or readiness to inflict serious bodily injury;

c. Causes bodily injury or substantial bodily injury to another human being while attempting to inflict serious bodily injury on any human being; or

d. Fires a firearm or hurls a destructive device at another human being.

N.D. Cent. Code Ann. § 12.1-17-02(1). These four subsections include different acts, committed with different mental states, using different weapons. Depending on the subsection at issue, the jury must find a distinct set of elements. *See* N.D. Pattern Jury Instructions (Criminal) K-8.01 to .04 (2017); *cf. State v. Sheldon*, 301 N.W.2d 604, 609–10 (N.D. 1980) (describing the subsections of the aggravated-assault statute as having differing elements). This is the paradigmatic example of a divisible statute.

Determining the offense of conviction is often one of the most difficult questions in a violent-force case. This case is no different. Only two *Shepard* documents are available, and neither is conclusive. First, the criminal complaint charged Schneider with one count of aggravated assault, but cited both subsections (a) and (c). Second, the trial court's judgment, entered after Schneider's guilty plea, stated only that he was guilty of felony aggravated assault. As the parties here recognize, there is no way to determine whether Schneider's conviction was under subsection (a) or subsection (c). Both are possibilities.

Schneider could have been convicted under either subsection, each of which contains a distinct set of elements. In these situations, "we must presume that the conviction rested upon nothing more than the least of the acts criminalized, and then determine whether even those acts" satisfy the force clause. *Moncrieffe v. Holder*, 569 U.S. 184, 190–91 (2013) (internal quotation marks, brackets, and citation omitted). If either subsection (a) or (c) does not require physical force, in other

words, then Schneider's conviction cannot satisfy the force clause. *See United States v. Horse Looking*, 828 F.3d 744, 747-49 (8th Cir. 2016) (holding that when the state charges a defendant under two statutory subsections for a single crime and one of those subsections does not satisfy the force clause, the conviction does not satisfy the force clause).

Schneider focuses on subsection (a), which provides that a person is guilty of aggravated assault if he "[w]illfully causes serious bodily injury to another human being." N.D. Cent. Code Ann. § 12.1-17-02(1)(a). North Dakota defines "[w]illfully" as acting "intentionally, knowingly, or *recklessly*." *Id.* § 12.1-02-02(1)(e) (emphasis added). Schneider contends that subsection (a), read together with the definition of "willfully," criminalizes reckless driving, which, as we have held, does not require physical force. He is right.

Any fair reading of subsection (a) leads to the conclusion that it covers reckless driving. The statute's unambiguous terms require only a reckless act that causes serious bodily injury. Nothing in the statute excludes reckless driving, and unsurprisingly, at least one person has been prosecuted and convicted under subsection (a) for reckless driving.[1] Complaint, *State v. Suelzle* (No. 27-2013-CR-00502); Trial Transcript at 284–85, *State v. Suelzle* (No. 27-2013-CR-00502). Less surprising still, given the plain statutory text, the North Dakota Supreme Court upheld the conviction on appeal. *State v. Suelzle*, 876 N.W.2d 485 (N.D. 2016) (unpublished per curiam); *cf. State v. Vetter*, 826 N.W.2d 334, 337–39 (N.D. 2013) (holding that a vehicle can be a dangerous weapon under subsection (b) of the aggravated-assault statute).

---

[1]We construe Schneider's motion to supplement the record with trial-court documents from *Suelzle* as a motion for judicial notice and grant it. *See Stutzka v. McCarville*, 420 F.3d 757, 760 n.2 (8th Cir. 2005) (holding that "we may take judicial notice of judicial opinions and public records").

Our case law is clear about what happens next. A statute that criminalizes reckless driving cannot satisfy the force clause. We reached this conclusion in *Ossana* and have not deviated from it since. 638 F.3d at 903; *accord United States v. Dawn*, 685 F.3d 790, 795 (8th Cir. 2012); *United States v. Boose*, 739 F.3d 1185, 1187–88 (8th Cir. 2014). The government tells us that the Supreme Court implicitly overruled *Ossana* in *Voisine v. United States*, 136 S. Ct. 2272, 2279–80 (2016). But the government made the same argument in a force-clause case last year, and we rejected it. *See Fields*, 863 F.3d at 1015–16. *Ossana* controls, regardless of the strength of the government's arguments to the contrary, because prior panel opinions bind us. *See Mader v. United States*, 654 F.3d 794, 800 (8th Cir. 2011) (en banc).

We do not know whether Schneider pleaded guilty under subsection (a) or (c) and therefore cannot say with certainty that his conviction had "as an element the use, attempted use, or threatened use of physical force," U.S.S.G. § 4B1.2(a)(1), even if the underlying facts leave no doubt that he actually used violent force against his then-girlfriend. The possibility that Schneider pleaded guilty under subsection (a) means that his conviction is not a crime of violence under the force clause and makes any consideration of subsection (c) unnecessary.

B.

We are only halfway there. Schneider's aggravated assault could still qualify as a crime of violence under the enumerated-offenses clause. Recall that this clause lists several offenses that count as crimes of violence under the Guidelines. *See* U.S.S.G. § 4B1.2(a)(2). Aggravated assault appears on the list. One might think this an easy case: Schneider pleaded guilty to aggravated assault, and the Guidelines categorize the offense as a crime of violence.

But it is not that easy. The Supreme Court has long held that the enumerated-offenses clause of the Armed Career Criminal Act does not refer to

whatever conduct a state happens to call "burglary," "aggravated assault," or any of the other listed offenses. *See generally Descamps v. United States*, 570 U.S. 254, 257 (2013); *Taylor v. United States*, 495 U.S. 575, 590–92 (1990). Rather, it incorporates the "generic, contemporary" meaning of those offenses, a "uniform definition independent of the labels employed by the various States' criminal codes." *Taylor*, 495 U.S. at 592, 598. We have extended the Supreme Court's interpretation of the Armed Career Criminal Act to the Guidelines. *See, e.g.*, *Ossana*, 638 F.3d at 899. The issue, then, is whether the crime Schneider committed counts as "generic" aggravated assault.

The basic approach here is similar to the one we used under the force clause. *See United States v. Roblero-Ramirez*, 716 F.3d 1122, 1125–26 (8th Cir. 2013) (applying the categorical and modified categorical approaches under the enumerated-offenses clause of the Guidelines). Just as before, we focus on the elements of the crime, not the defendant's underlying conduct. *Id.* at 1125. But this time around, instead of looking for a physical-force element, we compare the elements of the crime with those of the generic enumerated offense. *Id.* The ultimate question is whether the elements of the crime are "the same as, or narrower than, those of the generic offense." *Descamps*, 570 U.S. at 257. If they are, then the crime falls within the enumerated-offenses clause. And as with the physical-force element, if either subsection (a) or (c) does not fit the generic enumerated offense, then Schneider's conviction cannot satisfy the enumerated-offenses clause.

To determine whether a crime falls within the enumerated-offenses clause, we begin by identifying the elements of the generic enumerated offense. Otherwise, there would be no basis for a comparison. The elements of the generic offense, the Supreme Court has told us, come from the "generic, contemporary" definition of the enumerated crime. *Taylor*, 495 U.S. at 598. The text, of course, serves as the starting point for identifying them. *See Esquivel-Quintana v. Sessions*, 137 S. Ct. 1562, 1568–72, 1571 n.3 (2017). Here, however, the enumerated-offenses clause and its

accompanying commentary do not define most of the generic offenses and, in particular, they say nothing about the elements of aggravated assault. *See* U.S.S.G. § 4B1.2. We have to look elsewhere.

The Supreme Court has explained that how "the criminal codes of most States" define an offense provides strong evidence of its generic meaning. *Taylor*, 495 U.S. at 598; *see also Esquivel-Quintana*, 137 S. Ct. at 1571 & n.3. For that reason, the relevant Model Penal Code provision, if widely adopted, can reflect the elements of the generic offense. *See, e.g.*, *United States v. Kosmes*, 792 F.3d 973, 977 (8th Cir. 2015). In other cases, courts survey state statutes and identify their commonalities. *See, e.g.*, *Esquivel-Quintana*, 137 S. Ct. at 1571–73. Other sources can prove useful, including legal dictionaries and treatises, as well as statutes defining similar crimes under federal law. *See, e.g.*, *id.* at 1569–70; *United States v. House*, 825 F.3d 381, 387 (8th Cir. 2016). The overriding goal is to find the common, contemporary definition of the crime—in other words, to uncover the common set of elements, setting aside minor differences in terminology, that a prosecutor must prove and that a jury must find for the relevant offense. *See Taylor*, 495 U.S. at 598–99.

We again start with subsection (a) and consider whether its elements are the same as, or narrower than, those of generic aggravated assault. For a conviction under subsection (a), a defendant must (1) willfully engage in conduct that (2) causes serious bodily injury to another human being. *See* N.D. Cent. Code Ann. § 12.1-17-02(1)(a); *see also* N.D. Pattern Jury Instructions (Criminal) K-8.01 (2017). There can be no doubt that conduct causing serious bodily injury, when committed with a sufficiently culpable mental state, qualifies as generic aggravated assault. *See, e.g.*, *United States v. Esparza-Perez*, 681 F.3d 228, 231 (5th Cir. 2012); *United States v. Gomez-Hernandez*, 680 F.3d 1171, 1178 (9th Cir. 2012); *United States v. Palomino Garcia*, 606 F.3d 1317, 1331–32 (11th Cir. 2010). Indeed, forty-nine states and the

District of Columbia have a crime fitting this description on the books.[2] *See also* Model Penal Code § 211.1(2)(a). So half of subsection (a) matches the generic definition of aggravated assault. The other half, the mental-state requirement, is what presents the difficulty.

Subsection (a) prohibits willfully causing serious bodily injury. Recall that the term "willfully" includes intentional, knowing, and reckless acts. N.D. Cent. Code Ann. § 12.1-02-02(1)(e). The last of these, recklessness, is the least culpable mental state listed. *Id.* § 12.1-02-02(1)(c) (defining reckless conduct as acting "in conscious and clearly unjustifiable disregard of a substantial likelihood of the existence of the relevant facts or risks, such disregard involving a gross deviation from acceptable standards of conduct"). Thus, subsection (a) extends, at its broadest point, to reckless behavior.

The generic offense, however, does not extend so far. The least culpable mental state listed in the Model Penal Code's definition of aggravated assault is "reckless[ness] under circumstances manifesting extreme indifference to the value of human life." Model Penal Code § 211.1(2)(a). Extreme-indifference recklessness is different from ordinary recklessness—the mental state found in subsection (a). The law often punishes those who harm someone out of an extreme indifference to human life as though they intended to harm the victim. At common law, a person who killed another recklessly was guilty of manslaughter, but someone who committed the exact same act with extreme-indifference recklessness was guilty of murder. *See* 2 W. LaFave, Substantive Criminal Law § 14.4, at 593–604 (3d ed. 2018); 4 William Blackstone, Commentaries *199-201. The Model Penal Code preserves this historical tradition and uses the difference between ordinary and extreme-indifference

---

[2]Louisiana is the only outlier. It defines aggravated assault as a simple assault that is committed "with a dangerous weapon" or against a select group of victims. *See, e.g.*, La. Stat. Ann. §§ 14:37–:37.7. It does not have an aggravated-assault statute specifically targeting serious bodily injury.

recklessness as the dividing line between simple and aggravated assault. *See* Model Penal Code & Commentaries § 211.1 cmt. 4, at 188–90 (Am. Law Inst. 1980).

Most jurisdictions draw the line in the same place. In thirty-one states and the District of Columbia, a conviction for aggravated assault or an equivalent crime requires a person to cause serious bodily injury with at least an extreme indifference to human life.[3] In contrast, only eighteen states—North Dakota among them—allow for convictions based on ordinary recklessness.[4] The bottom line is that, to the extent

---

[3]Ala. Code § 13A-6-20(a)(3); Ark. Code Ann. § 5-13-204(a)(1); *Neely v. State*, 711 S.W.2d 482, 483 (Ark. Ct. App. 1986) (holding that aggravated assault under Arkansas law requires purposeful, rather than reckless, conduct); Cal. Penal Code § 245(a)(4); *People v. Williams*, 29 P.3d 197, 199 (Cal. 2001) (concluding that assault under California law requires an intentional act and knowledge that such an act will result in injury); Colo. Rev. Stat. § 18-3-202(1)(c); Conn. Gen. Stat. § 53a-59(a)(3); D.C. Code § 22-404.01(a)(2); Fla. Stat. Ann. §§ 784.011, 784.021; Ga. Code Ann. §§ 16-5-20, -21, -24; Idaho Code §§ 18-901, -903, -905, -907; 720 Ill. Comp. Stat. 5/12-3.05(a) (defining aggravated battery resulting in serious injury as requiring at least knowledge); Ind. Code § 35-42-2-1.5; Ky. Rev. Stat. Ann. § 508.010(1)(b); Md. Code Ann., Crim. Law § 3-202(a)(1); Mich. Comp. Laws § 750.84(1)(a); Minn. Stat. §§ 609.02, 609.221; Miss. Code Ann. § 97-3-7(2)(a)(i); Mont. Code Ann. § 45-5-202(1); Neb. Rev. Stat. § 28-308(1); Nev. Rev. Stat. § 200.481(1)(a), (2)(b); N.J. Stat. Ann. § 2C:12-1(b)(1); N.M. Stat. Ann. §§ 30-3-4 to -5; N.Y. Penal Law § 120.10(3); N.C. Gen. Stat. § 14-32.4; *State v. Williams*, 571 S.E.2d 619, 622 (N.C. Ct. App. 2002) (interpreting North Carolina law as requiring an "intentional assault"); Ohio Rev. Code Ann. § 2903.12(A)(1); Or. Rev. Stat. § 163.165(1)(b); 18 Pa. Stat. & Cons. Stat. § 2702(a)(1); S.D. Codified Laws § 22-18-1.1(1); Vt. Stat. Ann. tit. 13, § 1024(a)(1); Va. Code Ann. § 18.2-51.2(A); *Essex v. Commonwealth*, 322 S.E.2d 216, 219–21 (Va. 1984) (explaining that maliciousness, the mens rea element of Virginia aggravated assault, requires either "express malice" or "conduct likely to cause death or great bodily harm, willfully or purposefully undertaken"); W. Va. Code § 61-2-9(a); Wis. Stat. § 940.19; Wyo. Stat. Ann. § 6-2-502(a)(i).

[4]Alaska Stat. § 11.41.210(a)(2); Ariz. Rev. Stat. Ann. §§ 13-1203-04; Del. Code Ann. tit. 11, § 612(a)(1); Haw. Rev. Stat. Ann. § 707-711(1)(b); Iowa Code

that there is a consensus, ordinary recklessness is not an element of aggravated assault. *See Esquivel-Quintana*, 137 S. Ct. at 1571–73 (holding that California's statutory-rape law reached further than the generic definition of "sexual abuse of a minor," notwithstanding that fifteen other states had laws broader than the generic definition).

We reach the same conclusion as three other circuits. *See United States v. Barcenas-Yanez*, 826 F.3d 752, 758 (4th Cir. 2016); *United States v. McFalls*, 592 F.3d 707, 717 (6th Cir. 2010), *abrogated on other grounds by Voisine*, 136 S. Ct. 2272; *United States v. Esparza-Herrera*, 557 F.3d 1019, 1025 (9th Cir. 2009) (per curiam). Like us, these courts relied on the Model Penal Code and the majority rule among the states in concluding that ordinary recklessness does not satisfy the mental-state requirement for generic aggravated assault.[5] *See, e.g.*, *Barcenas-Yanez*,

---

§§ 708.1-.2; *State v. Peck*, 539 N.W.2d 170, 175 (Iowa 1995) (describing aggravated assault as a general-intent crime, which can be committed through reckless conduct); Kan. Stat. Ann. § 21-5413(b)(2)(A); Me. Rev. Stat. Ann. tit. 17-A, § 208(1); Mass. Gen. Laws ch. 265, § 13A; *Commonwealth v. Pease*, 731 N.E.2d 92, 94 (Mass. App. Ct. 2000) (holding that wanton or reckless conduct can satisfy the intent element of assault and battery); Mo. Rev. Stat. § 565.052(1)(3); N.H. Rev. Stat. Ann. § 631:2(I)(a); N.D. Cent. Code Ann. § 12.1-02-02(1)(e) (defining "willfully"); *id.* § 12.1-17-02(1)(a); Okla. Stat. tit. 21, § 646(A)(1); *James v. State*, 599 P.2d 411, 412 (Okla. Crim. App. 1979) (explaining that aggravated assault resulting in serious bodily injury is a general-intent crime); 11 R.I. Gen. Laws § 11-5-2(a); S.C. Code Ann. § 16-3-600(B)(1)(a); Tenn. Code Ann. § 39-13-102(a)(1)(B)(i); Tex. Penal Code Ann. §§ 22.01-.02; Utah Code Ann. § 76-5-103(1)(a)(iii); *State v. Fahina*, 400 P.3d 1177, 1183 n.1 (Utah Ct. App. 2017) (noting that a defendant can commit aggravated assault recklessly); Wash. Rev. Code § 9A.36.021(1)(a).

[5]The Fourth and Ninth Circuits have gone further and held that the generic definition of aggravated assault requires knowledge, an even more culpable mental state than extreme-indifference recklessness. *See United States v. Garcia-Jimenez*, 807 F.3d 1079, 1086 (9th Cir. 2015); *Barcenas-Yanez*, 826 F.3d at 758. We need not go as far as either court in resolving this case. Whether the generic offense requires

826 F.3d at 756–57; *McFalls*, 592 F.3d at 717; *Esparza-Herrera*, 557 F.3d at 1024–25.

Only the Fifth Circuit has held otherwise. In *United States v. Mungia-Portillo*, it acknowledged that extreme-indifference recklessness is required under the Model Penal Code definition of aggravated assault. 484 F.3d 813, 817 (5th Cir. 2007). Yet it held that a Tennessee statute requiring ordinary recklessness was close enough, characterizing the discrepancy as "minor." *Id.* In its view, the defining feature of aggravated assault is the conduct it prohibits, like causing serious bodily injury or using a deadly weapon, which it punishes more harshly than simple assault. *Id.* So as long as a statute has this essential feature, *Mungia-Portillo* held, "a defendant's mental state in committing an aggravated assault . . . is not dispositive of whether" the crime fits within the generic definition. *Id.*

The Fifth Circuit's analysis is unpersuasive. The Supreme Court "ha[s] often held, and in no uncertain terms, that a state crime cannot qualify as [a] . . . predicate if its elements are broader than those of a listed generic offense." *Mathis*, 136 S. Ct. at 2251. The comparative analysis applies to *all* of the elements of the generic offense, not just those deemed essential. But the Fifth Circuit did not even attempt to uncover the elements of the generic offense. It considered only whether the Tennessee statute had the two most common features of aggravated assault and more or less ignored any others. *Mungia-Portillo*, 484 F.3d at 816–17. This so-called "common sense approach," *id.* at 816, is not what the Supreme Court has instructed us to do. Rather, our task is to consider whether the recklessness requirement in the North Dakota statute is broader than the mental-state requirement for the generic offense. *See, e.g.*, *Mathis*, 136 S. Ct. at 2251; *Descamps*, 570 U.S. at 261.

---

extreme-indifference recklessness or knowledge makes no difference here because, whatever the answer, ordinary recklessness is still a less culpable mental state.

Nor is the Fifth Circuit's reasoning persuasive on its own terms. Its analysis rested, at least in part, on the notion that there is only a "minor" difference between ordinary and extreme-indifference recklessness. *Mungia-Portillo*, 484 F.3d at 817. To be sure, minor differences in terminology do not make the elements of a state statute broader than those of the generic offense. *See Taylor*, 495 U.S. at 599. But this principle does not apply here. As we have explained, there is a long tradition of treating ordinary and extreme-indifference recklessness differently, in terms of both culpability and punishment.

The traditional view is alive and well. In all but one of the jurisdictions that define extreme-indifference recklessness as the minimum mental state for aggravated assault,[6] ordinary recklessness gives rise to simple assault.[7] Extreme-indifference recklessness also still divides murder from manslaughter in many states. *See, e.g.*, Alaska Stat. Ann. § 11.41.110(a)(2); Kan. Stat. Ann. § 21-5403(a)(2); N.H. Rev. Stat.

---

[6]Ala. Code § 13A-6-20(a)(3); Colo. Rev. Stat. § 18-3-202(1)(c); Conn. Gen. Stat. § 53a-59(a)(3); D.C. Code § 22-404.01(a)(2); Ky. Rev. Stat. Ann. § 508.010(1)(b); Miss. Code Ann. § 97-3-7(2)(a)(i); N.J. Stat. Ann. § 2C:12-1(b)(1); N.Y. Penal Law § 120.10(3); Or. Rev. Stat. § 163.165(1)(b); 18 Pa. Stat. & Cons. Stat. § 2702(a)(1); S.D. Codified Laws § 22-18-1.1(1); Vt. Stat. Ann. tit. 13, § 1024(a)(1); Va. Code Ann. § 18.2-51.2(A); *Essex v. Commonwealth*, 322 S.E.2d 216, 219–21 (Va. 1984) (holding that maliciousness, the mens rea element of Virginia's aggravated-assault statute, may "be implied from conduct likely to cause death or great bodily harm, willfully or purposefully undertaken"); Wyo. Stat. Ann. § 6-2-502(a)(i).

[7]Ala. Code § 13A-6-22(a)(2) (defining simple assault); Colo. Rev. Stat. § 18-3-204(1)(a) (same); Conn. Gen. Stat. § 53a-61(a)(2) (same); D.C. Code § 22-404(a)(2) (same); Ky. Rev. Stat. Ann. § 508.030(1)(b) (defining simple assault with a deadly weapon); Miss. Code. Ann. § 97-3-7(1)(a) (defining simple assault); N.J. Stat. Ann. § 2C:12-1(1) (same); N.Y. Penal Law § 120.00(2); Or. Rev. Stat. § 163.160(1)(a) (same); 18 Pa. Stat. & Cons. Stat. § 2701(a)(1) (same); S.D. Codified Laws § 22-18-1(2) (same); Vt. Stat. Ann. tit. 13, § 1023(a)(1) (same); Wyo. Stat. Ann. § 6-2-501(b) (same).

Ann. § 630:1-b(I)(a); N.D. Cent. Code Ann. § 12.1-16-01(1)(b). Thus, the distinction between ordinary and extreme-indifference recklessness can be the difference between a misdemeanor and a felony, or even between manslaughter and murder. *See, e.g.*, Ala. Code § 13A-6-20(b) (defining aggravated assault as a felony); Ala. Code § 13A-6-22(b) (defining simple assault as a misdemeanor); Or. Rev. Stat. Ann. § 163.165(2)(a) (defining aggravated assault as a felony); Or. Rev. Stat. § 163.160(2) (defining simple assault as a misdemeanor). This is not, as the Fifth Circuit put it, a "sufficiently minor" discrepancy.

Accordingly, we hold that subsection (a) of North Dakota's aggravated-assault statute is broader than the generic definition of aggravated assault because it includes recklessly causing serious bodily injury. It is therefore unnecessary to consider whether subsection (c) is consistent with the generic definition of aggravated assault.

III.

Schneider's 2012 aggravated-assault conviction satisfies neither the force clause nor the enumerated-offenses clause of the definition of a crime of violence in the Sentencing Guidelines. We therefore remand for resentencing.

_____

-15-