# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-1350
_____

United States of America

*Plaintiff - Appellee*

v.

Catrell Ronald Green

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Southern District of Iowa - Central
_____

Submitted: January 9, 2023
Filed: June 8, 2023
_____

Before KELLY, ERICKSON, and STRAS, Circuit Judges.
_____

STRAS, Circuit Judge.

Catrell Green received a 108-month sentence for possessing a firearm as a felon. Although he challenges the base-offense-level calculation, a four-level enhancement for possessing a firearm in connection with another felony offense, and the overall length of the sentence, we affirm.

I.

A routine traffic stop led to a foot chase when the driver took off running. Left behind was Green, who was lying down in the backseat. After a nearly three-minute struggle, officers finally dragged him out of the car.

It turns out that there may have been a reason why Green stayed put. Stashed on the floor, underneath the passenger seat, was a Taurus 9-millimeter pistol. Just days earlier, Green had brandished what appeared to be the same gun in a Snapchat video. With the evidence against him mounting, he decided to plead guilty to a single felon-in-possession count rather than risk a trial. *See* 18 U.S.C. §§ 922(g)(1), 924(a)(2).

Multiple factors went into determining Green's sentence. The base offense level came from his "two [prior] felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 2K2.1(a)(1) (providing for a base offense level of 26 in these circumstances if the "semiautomatic firearm" he possessed was "capable of accepting a large[-]capacity magazine"). Everyone agreed that a prior possession-with-intent-to-deliver-marijuana conviction counted as one. *See* Iowa Code § 124.401(1)(d). A 2015 assault while displaying a dangerous weapon was the other. *See* Iowa Code §§ 708.1(2), 708.2(3) (2013).

The second factor was a four-level enhancement for possessing the gun "in connection with another felony offense." U.S.S.G. § 2K2.1(b)(6)(B). The district court[1] concluded that Green had interfered with official acts by resisting arrest while "armed." Iowa Code § 719.1(1)(f). Application of a three-level reduction for acceptance of responsibility left him with a total offense level of 27, *see* U.S.S.G. § 3E1.1, which equated to 108 months in prison after a downward variance of 12 months, *see id.* § 5G1.1(a).

---

[1]The Honorable Rebecca Goodgame Ebinger, United States District Judge for the Southern District of Iowa.

## II.

A key component of any sentence is the base offense level—the starting point for the calculation. *See* U.S.S.G. § 1B1.1(a)(1), (2) (requiring the sentencing court to "[d]etermine the base offense level" for the "offense of conviction"). Here, two facts led to a base offense level of 26: the pistol found in the car had a "large[-]capacity magazine" and Green had "two [qualifying] felony convictions." *Id.* § 2K2.1(a)(1). On appeal, he challenges only one of the two convictions, the "crime of violence."

The Sentencing Guidelines define a "crime of violence" as a felony offense that "has as an element the use, attempted use, or threatened use of physical force against the person of another." *Id.* § 4B1.2(a)(1); *see United States v. Schneider*, 905 F.3d 1088, 1090 (8th Cir. 2018). This definition may look familiar because the Armed Career Criminal Act uses the same one for "violent felon[ies]." *See* 18 U.S.C. § 924(e)(2)(B)(i). It is more commonly known as the "force" or "elements" clause, *see United States v. Matthews*, 25 F.4th 601, 603 (8th Cir. 2022), and to satisfy it, "the legal definition of [the] crime" is what matters, "not [the defendant's] actual acts," *Schneider*, 905 F.3d at 1090. *See United States v. Harrison*, 809 F.3d 420, 425 (8th Cir. 2015) (explaining that our review is de novo).

A statute's structure plays a key role in the analysis. On the simpler side are indivisible statutes, which "create[] a single crime" with "a single set of elements." *Schneider*, 905 F.3d at 1090. In those situations, our task is straightforward: "examine th[e] elements" of the crime, *id.*, and then figure out whether it necessarily involves "the use, attempted use, or threatened use of physical force against" another. U.S.S.G. § 4B1.2(a)(1). If so, it qualifies as a violent felony or a crime of violence.

"Not all statutes," however, "are so simple." *Schneider*, 905 F.3d at 1090. Some are divisible, meaning they contain "multiple crimes" with "more than one set of elements." *Id.* In those situations, the analysis involves an additional step. *See*

-3-

*id.* Identifying the exact crime requires peeking at a limited class of documents, also known as *Shepard* documents. *See id.* Only then do we ask the same question as before: based on the elements of whichever crime the defendant committed, does the offense necessarily involve "the use, attempted use, or threatened use of physical force against" another? U.S.S.G. § 4B1.2(a)(1). If so, it also qualifies as a violent felony or a crime of violence.

With that background in mind, our task is to determine whether the crime of assault while displaying a dangerous weapon, *see* Iowa Code § 708.2(3), is a "crime of violence," U.S.S.G. § 4B1.2(a). On its face, the statute lists two elements: an assault plus the "use[] or display[] [of] a dangerous weapon in connection with the assault." Iowa Code § 708.2(3); *see United States v. McGee*, 890 F.3d 730, 736 (8th Cir. 2018) (explaining that "[t]he elements of the offense are the use or display of a dangerous weapon, [Iowa Code] § 708.2(3), in committing an assault violation of [Iowa Code] § 708.1"). If that was it, the statute would create only one crime with a single set of elements.

But assault itself is defined elsewhere, and a cross-reference leads us to the right place. Iowa Code § 708.2(3) (pointing to the definition of "assault" in Iowa Code § 708.1). Under the cross-referenced statute, any of three acts qualify:

a. [One] . . . intended to cause pain or injury to, or which is intended to result in physical contact which will be insulting or offensive to another, coupled with the apparent ability to execute the act.

b. [One] . . . intended to place another in fear of immediate physical contact which will be painful, injurious, insulting, or offensive, coupled with the apparent ability to execute the act.

c. Intentionally point[ing] any firearm toward another, or display[ing] in a threatening manner any dangerous weapon toward another.

Iowa Code § 708.1(2) (2013). Putting it all together, Green must have used or displayed a dangerous weapon while committing an assault in one of those three ways. Here, the *Shepard* documents are silent on which type of assault Green

-4-

committed when he "use[d] or display[ed] a dangerous weapon."  Iowa Code § 708.2(3).

Fortunately, it does not matter.  In *United States v. McGee*, faced with a nearly identical set of facts, we concluded that "us[ing] or "display[ing] a dangerous weapon," *id.*, satisfies the force clause.  *McGee*, 890 F.3d at 736–37.  The reason: "displaying an operational weapon before another in an angry or threatening manner qualifies as a threatened use of physical force."  *Id.* (citation omitted).  No matter which type of assault Green committed, in other words, his conviction counts.  *See id.* at 737.

Green counters that the law has changed since *McGee*.  He points to *Borden v. United States*, 141 S. Ct. 1817 (2021), which clarified that "crimes that can be committed recklessly" do not involve "the use, attempted use, or threatened use of physical force against" another, *United States v. Hoxworth*, 11 F.4th 693, 695–96 (8th Cir. 2021) (discussing *Borden*'s holding).  *See United States v. Lopez-Castillo*, 24 F.4th 1216, 1219 n.2 (8th Cir. 2022) (explaining that *Borden* also applies to the crime-of-violence definition in the Sentencing Guidelines).

*Borden*, however, is of no help to Green.  Each of the three ways of committing assault in Iowa requires intent.  *See* Iowa Code § 708.1(2)(a) (2013) (requiring "*inten*[*t*] to cause pain or injury" (emphasis added)); *id.* § 708.1(2)(b) (2013) (requiring "*inten*[*t*] to place another in fear of immediate physical contact" (emphasis added)); *id.* § 708.1(2)(c) (2013) (requiring "[*i*]*ntentionally* point[ing] any firearm toward another, or display[ing] [it] in a threatening manner" (emphasis added)).  Besides, it is difficult to imagine how anyone could "use[] or display[] a dangerous weapon" unintentionally.  Iowa Code § 708.2(3).  The point is that "*Borden*'s holding . . . does not affect" *McGee*. *United States v. Larry*, 51 F.4th 290, 292 (8th Cir. 2022); *see Lopez-Castillo*, 24 F.4th at 1219 n.2 (noting that *Borden* only tells us that "a crime of violence . . . requires a mens rea greater than recklessness—e.g., knowledge or intent").  Nor, as a result, does it affect Green's base offense level.

Beyond the base offense level, Green believes that he did not deserve a four-level enhancement for possessing a firearm "in connection with another felony offense." U.S.S.G. § 2K2.1(b)(6)(B). On this issue, we review the district court's legal conclusions de novo and its factual findings for clear error. *See United States v. Boots*, 816 F.3d 971, 973 (8th Cir. 2016) (per curiam).

The story behind the enhancement begins with the struggle in the backseat of the car. Recall that it took officers nearly three minutes to drag Green out, causing one to suffer a knee injury. At sentencing, the district court found that Green's actions rose to the level of felony interference with official acts. *See* Iowa Code § 719.1(1)(f). Green does not question the interference itself. Rather, he disputes the finding that he was "armed," which is the element that turned the interference into a felony. *Id.*

We are not writing on a blank slate. One Iowa Court of Appeals decision, *State v. Campbell-Scott*, provides guidance. No. 16-0472, 2017 WL 512590 (Iowa Ct. App. Feb. 8, 2017). There, officers found two guns near a car, one in a grassy area by a pole and the other near the passenger's side door. *See id.* at *1. The issue was whether the driver was "armed" when he made a run for it and resisted arrest. *Id.* at *1–*2.

The Iowa Court of Appeals said yes. *Id.* at *2. It equated the requirement of being "armed" with "possession" of a firearm. *Id.* at *2; *see United States v. Robison*, 759 F.3d 947, 950 (8th Cir. 2014) (relying on two unpublished decisions from the Iowa Court of Appeals for a U.S.S.G. § 2K2.1(b)(6)(B) enhancement). Possession can either be "actual or constructive," *State v. Reed*, 875 N.W.2d 693, 705 (Iowa 2016), and the latter "exists when[ever] the evidence shows the defendant ha[d] knowledge of the presence of the [weapon] and ha[d] the authority or right to maintain control of it," *Campbell-Scott*, 2017 WL 512590, at *2 (quoting *Reed*, 875

N.W.2d at 705). The point is that, in Iowa, being "armed" does not require actually carrying the firearm.[2]

There is just as much evidence of constructive possession here as in *Campbell-Scott*, if not more. First, there is Green's guilty plea, which necessarily required him to admit that he possessed the gun. Second, there was a video of him wielding what appeared to be the same gun just days earlier, which shows that he had "authority" and "control" over it. *Reed*, 875 N.W.2d at 705 (citation omitted). Third, no one disputes that the gun's location under the front passenger seat placed it within arm's reach of him. On these facts, we cannot say the district court's finding that he was "armed" was clearly erroneous.[3]

## IV.

Finally, Green challenges the substantive reasonableness of his 108-month prison sentence. Given the 12-month downward variance he received, "it is nearly inconceivable" that the district court "abuse[d] its discretion in not varying downward [even] further." *United States v. Carrillo*, 982 F.3d 1134, 1136 (8th Cir.

---

[2]We recognize that *Campbell-Scott*, an unpublished opinion, is not strictly "controlling." Iowa R. App. P. 6.904(2)(c). We nevertheless follow it for two reasons. First, it relies heavily on binding Iowa Supreme Court precedent. And second, its analysis is consistent with the plain meaning of the word "armed." *See The American Heritage Dictionary of the English Language* 96 (5th ed. 2016) (defining "armed" as "suppl[ied] or equip[ped] . . . with weaponry" or "prepare[d] [for] . . . conflict"); *Webster's Third New International Dictionary* 119 (2002) (defining "armed" as being "furnished with weapons of offense or defense"); *cf. Muscarello v. United States*, 524 U.S. 125, 126–27 (1998) (holding that "us[ing] or carr[ying] a firearm" occurs when the firearm is locked in the glove compartment or trunk of a vehicle that the defendant is driving).

[3]To the extent Green argues that possession of the gun was not "in connection with" the interference, U.S.S.G. § 2K2.1(b)(6)(B), we reject that argument as well. The "presence" of the firearm in the car "facilitated or had the potential to facilitate" his decision to resist. *United States v. Harper*, 466 F.3d 634, 650 (8th Cir. 2006).

2020) (citation omitted).  That is especially true here, given that the court thoroughly considered the statutory sentencing factors, *see* 18 U.S.C. § 3553(a), did not rely on an improper or irrelevant factor, and made no clear error of judgment, *United States v. Feemster*, 572 F.3d 455, 461–62 (8th Cir. 2009) (en banc).

V.

We accordingly affirm the judgment of the district court.

_____