**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-1537
_____

UNITED STATES OF AMERICA

v.

TROY BRASBY,
                    Appellant
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 1-20-cr-00122-001)
U.S. District Judge: Honorable Noel L. Hillman
_____

Argued November 17, 2021

Before:  CHAGARES, *Chief Judge*, BIBAS and FUENTES,
*Circuit Judges*.

(Filed: February 23, 2023)

Lori M. Koch [ARGUED]
Office of Federal Public Defender
800-840 Cooper Street

Suite 350
Camden, NJ 08102
	*Counsel for Appellant Troy Brasby*

Mark E. Coyne
Steven G. Sanders [ARGUED]
Office of United States Attorney
970 Broad Street
Room 700
Newark, NJ 07102
	*Counsel for Appellee United States of America*

———————————

OPINION OF THE COURT

———————————

FUENTES, *Circuit Judge*.

Troy Brasby appeals his federal sentence for which he received a sentencing enhancement for a prior conviction of aggravated assault under N.J. Stat. Ann. § 2C:12-1(b)(1). The New Jersey offense can be committed recklessly "under circumstances manifesting extreme indifference to the value of human life."[1] We have yet to review whether a state crime that can be committed with extreme indifference recklessness qualifies as a crime of violence for purposes of sentencing enhancement under Section 4B1.2(a) of the U.S. Sentencing Guidelines. Since the Model Penal Code, learned treatises, and our own multijurisdictional survey show that New Jersey aggravated assault matches the generic federal offense, we

---

[1] N.J. Stat. Ann. § 2C:12-1(b)(1).

hold that Brasby's prior conviction qualifies as a crime of violence under Section 4B1.2(a). We therefore affirm the District Court's judgment imposing Brasby's sentence.

## FACTS AND PROCEDURAL HISTORY

In December 2005, Brasby was convicted in New Jersey state court of aggravated assault in violation of N.J. Stat. Ann. § 2C:12-1(b)(1)—a second-degree felony—for recklessly causing serious bodily injury to another person by utilizing a handgun to shoot the person four times in the back. The New Jersey aggravated assault statute under which Brasby was convicted provided:

> A person is guilty of aggravated assault if he . . . [a]ttempts to cause serious bodily injury to another, or causes such injury purposely or knowingly or under circumstances manifesting extreme indifference to the value of human life recklessly causes such injury . . . .[2]

Brasby was sentenced to nine years' imprisonment for this felony conviction.

In November 2019, police again arrested Brasby after they observed him selling drugs. A search incident to the arrest found suspected controlled substances and a stolen handgun loaded with nine rounds of ammunition. Because of Brasby's

---

[2] *Id.*; *see also* 2003 NJ Sess. Laws Ch. 218 (eff. Jan. 9, 2004). In 2019, the law was amended. *See* 2019 N.J. Laws Ch. 219 (eff. Dec. 1, 2019). We express no opinion about whether that change would alter our analysis.

prior felony conviction for aggravated assault, it was illegal for him to possess a firearm. Brasby was indicted in the U.S. District Court for the District of New Jersey on a single count of illegal possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). Brasby entered into a guilty plea agreement with the Government, but the parties did not agree on whether Brasby's 2005 conviction was a felony conviction for a crime of violence. The Government reserved the right to argue that Brasby's previous conviction for aggravated assault was a crime of violence, and that his base offense level should be 20 under the U.S. Sentencing Guidelines ("U.S.S.G.") § 2K2.l(a)(4)(A).[3] Brasby reserved the right to argue that his conviction for aggravated assault was not a crime of violence, and that his base offense level should be 14 under U.S.S.G. § 2K2.l(a)(6)(A).[4]

At sentencing in March 2021, the District Court considered which base offense level applied based on whether Brasby's aggravated assault conviction qualified as a felony conviction for a crime of violence. A "crime of violence" is defined in U.S.S.G. § 4B1.2(a) (emphasis added):

---

[3] U.S.S.G. § 2K2.1(a)(4)(A) provides: "Base Offense Level . . . 20, if . . . the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense . . . ." (emphasis added).

[4] U.S.S.G. § 2K2.l(a)(6)(A) provides: "Base Offense Level . . . 14, if the defendant . . . was a prohibited person at the time the defendant committed the instant offense . . . ."

The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—

(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

(2) is murder, voluntary manslaughter, kidnapping, <u>aggravated assault</u>, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c).

The Government argued that Brasby's conviction for aggravated assault under N.J. Stat. Ann. § 2C:12-1(b)(1) should qualify as a crime of violence under both clauses. However, the Government conceded that its argument under the elements clause was foreclosed by this Court's precedent in *United States v. Otero*, in which we held that a conviction for reckless conduct is insufficient to qualify as a crime of violence under the elements clause.[5] The Government therefore focused its argument on Brasby's conviction for aggravated assault as a crime of violence under the enumerated offenses clause. The Government argued that the New Jersey statute "is in sync with the generic definition of aggravated assault," which makes New Jersey aggravated assault a crime of violence that would support a base offense level of 20 under

---

[5] *See* 502 F.3d 331, 335 (3d Cir. 2007).

5

the enumerated offenses clause.[6]  Brasby argued in opposition that his conviction for aggravated assault does not meet the definition of a "crime of violence," and so the base offense level should be 14.

The District Court noted "a lack of consensus on the generic definition of assault . . . across the circuits and across the federal courts," including conflicting cases from the Eighth and Ninth Circuits.[7]  Although the Eighth and Ninth Circuits conducted multijurisdictional surveys of criminal codes to determine whether some degree of recklessness could satisfy the *mens rea* for aggravated assault in each jurisdiction, the District Court concluded that the Eighth Circuit in *United States v. Schneider* "took a more searching and comprehensive review" that "more accurately captures the generic offense of aggravated assault across the states and, therefore, for federal purposes in the [Sentencing Guidelines]."[8]  The District Court also noted that "the Model Penal Code tracks the New Jersey statute almost word by word, suggesting that the Model Penal Code is an accurate reflection of the generic offense of assault."[9]

The District Court concluded that a conviction for aggravated assault in New Jersey can be obtained with a minimum *mens rea* of heightened recklessness.  The District Court also concluded that the federal generic definition of

---

[6] App. 87.

[7] App. 91–92 (comparing *United States v. Schneider*, 905 F.3d 1088 (8th Cir. 2018), with *United States v. Garcia-Jimenez*, 807 F.3d 1079 (9th Cir. 2015)).

[8] *See* App. 91–92, 94.

[9] App. 92–93.

aggravated assault—and therefore the definition under the U.S. Sentencing Guidelines—includes the same *mens rea* of heightened recklessness as the New Jersey statute. Accordingly, the District Court found that Brasby's conviction under N.J. Stat. Ann. § 2C:12-1(b)(1) qualifies as a crime of violence under the enumerated offenses clause of U.S.S.G. § 4B1.2(a) to support a base offense level of 20.

From the base offense level of 20, the District Court calculated a Guidelines range of 57 to 71 months' imprisonment.[10] Had Brasby's conviction for aggravated assault not been deemed a crime of violence—such that his base offense level would have been 14—he would have faced a Guidelines range of 30 to 37 months' imprisonment. The District Court sentenced Brasby to 57 months' imprisonment,

---

[10] From the base offense level of 20, the District Court added 6 levels because the firearm involved was stolen and because Brasby used or possessed a firearm or ammunition in connection with another felony offense. The District Court subtracted 3 levels because Brasby demonstrated acceptance of responsibility for the offense and assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a guilty plea. Based on these adjustments, the District Court calculated Brasby's total offense level to be 23 Brasby's criminal history score was 6 because he had two prior felony convictions: the conviction for aggravated assault, and a conviction for unlawful possession of a firearm. This criminal history score established a criminal history category of III**.** With a total offense level of 23 and a criminal history category of III, the Guidelines range for imprisonment was 57 to 71 months.

the minimum of the calculated Guidelines range.[11]  Brasby timely appealed.

## JURISDICTION

The District Court had subject-matter jurisdiction pursuant to 18 U.S.C. § 3231.  We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).  We exercise plenary review over the District Court's legal conclusions, including the determination that a prior conviction constitutes a crime of violence under the U.S. Sentencing Guidelines.[12]

## DISCUSSION

Brasby argues that New Jersey aggravated assault under N.J. Stat. Ann. § 2C:12-1(b)(1) does not qualify as a crime of violence under U.S.S.G. § 4B1.2(a)(2) because it is broader than the federal generic definition of aggravated assault in that a person can commit aggravated assault under N.J. Stat. Ann. § 2C:12-1(b)(1) with a reckless *mens rea*, whereas the federal generic definition does not include recklessness.

The U.S. Sentencing Guidelines define a "crime of violence" as "any offense under federal or state law, punishable by imprisonment for a term exceeding one year," that:

---

[11] The District Court stated that, even if it had applied a base offense level of 14, it would have varied upward to the same sentence "to afford adequate deterrence, both general and specific, and to protect the public."  App. 113.

[12] *United States v. McCants*, 952 F.3d 416, 421 (3d Cir. 2020); *United States v. Chapman*, 866 F.3d 129, 131 (3d Cir. 2017).

(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

(2) is murder, voluntary manslaughter, kidnapping, <u>aggravated assault</u>, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c).[13]

The definition of "crime of violence" in the Sentencing Guidelines (U.S.S.G. § 4B1.2(a)(1)) bears "substantial similarity" to the definition of "violent felony" in the Armed Career Criminal Act ("ACCA") (18 U.S.C. § 924(e)(2)(B)).[14] Because of this similarity, courts generally apply authority interpreting one provision to the other.[15] In a plurality opinion in *Borden v. United States*, the Supreme Court held that a criminal offense cannot count as a "violent felony" under the elements (or use-of-force) clause of the ACCA if it requires only a *mens rea* of ordinary recklessness.[16] However, the Supreme Court explicitly stated in *Borden* that it did not decide

---

[13] U.S.S.G. § 4B1.2(a) (emphasis added).

[14] *See United States v. Marrero*, 743 F.3d 389, 395 n.2 (3d Cir. 2014); *United States v. Hopkins*, 577 F.3d 507, 511 (3d Cir. 2009) ("[T]he definition of a violent felony under the ACCA is sufficiently similar to the definition of a crime of violence under the Sentencing Guidelines that authority interpreting one is generally applied to the other.").

[15] *Marrero*, 743 F.3d at 395 n.2; *Hopkins*, 577 F.3d at 511.

[16] 141 S. Ct. 1817, 1821–22, 1834 (2021) (plurality opinion); *id.* at 1834 (Thomas, J., concurring in the judgment).

whether offenses with "extreme recklessness" fall within the ACCA elements clause.[17]  Some of our sister circuit courts have applied *Borden* to conclude that an aggravated assault conviction does not count as a violent felony under the ACCA if the state statute requires a minimum of ordinary recklessness.[18]  We have similarly held that "a conviction for *mere* recklessness cannot constitute a crime of violence" under the Sentencing Guidelines.[19]  But we have not before decided whether a conviction for *heightened* recklessness can constitute a crime of violence under the Sentencing Guidelines. We need not decide how *Borden* applies here because we decide this case under the enumerated offenses clause rather than the elements clause of U.S.S.G. § 4B1.2(a).

Courts employ the categorical approach to determine whether a prior conviction qualifies as a crime of violence

---

[17] *Borden*, 141 S. Ct. at 1825 n.4; *see also id.* at 1856 n.21 (Kavanaugh, J., dissenting) ("As the plurality notes, today's decision should not be construed to express any view on the application of the use-of-force clause to crimes requiring a mental state of *extreme* recklessness." (emphasis in original)).

[18] *See, e.g.*, *United States v. Hoxworth*, 11 F.4th 693, 696 (8th Cir. 2021) (Texas); *United States v. Ash*, 7 F.4th 962, 963 (10th Cir. 2021) (Kansas); *United States v. Brenner*, 3 F.4th 305, 307 (6th Cir. 2021) (Tennessee).

[19] *United States v. Lee*, 612 F.3d 170, 195–97 (3d Cir. 2010) (emphasis added); *see also United States v. Quinnones*, 16 F.4th 414, 420 (3d Cir. 2021) (explaining that, "if an offense can be committed with recklessness . . . it is not a crime of violence" under U.S.S.G. § 4B1.2 (citing *Borden*, 141 S. Ct. at 1825).

under the enumerated offenses clause of U.S.S.G. § 4B1.2(a).[20] Under the categorical approach, "the facts of a given case are irrelevant" and courts focus "instead on whether the elements of the statute of conviction meet the federal standard."[21] The federal standard is the "generic" definition of the offense (i.e., "the offense as commonly understood"), which courts define by considering how the Model Penal Code, learned treatises, and the criminal codes of most states define the offense.[22]

Courts follow three steps for the categorical approach: (1) identify the elements of the offense underlying the conviction; (2) identify the elements of the generic offense; and (3) determine whether the former "substantially corresponds" to the latter.[23] If the statute of conviction has the same elements as the generic offense, or if the statute defines the offense more narrowly, then the prior conviction is a categorical match and can serve as a predicate offense for a sentencing enhancement.[24] However, if the statute sweeps more broadly than the generic offense, then a conviction under that statute cannot serve as a predicate offense.[25]

---

[20] *McCants*, 952 F.3d at 425; *Chapman*, 866 F.3d at 133.

[21] *Borden*, 141 S. Ct. at 1822; *see also Mathis v. United States*, 579 U.S. 500, 505 (2016) ("The court . . . lines up that crime's elements alongside those of the generic offense and sees if they match."); *Taylor v. United States*, 495 U.S. 575, 600 (1990).

[22] *Mathis*, 579 U.S. at 503; *See Taylor*, 495 U.S. at 598–600; *McCants*, 952 F.3d at 428.

[23] *See Taylor*, 495 U.S. at 592–602; *United States v. Graves*, 877 F.3d 494, 501 (3d Cir. 2017).

[24] *Descamps v. United States*, 570 U.S. 254, 261 (2013).

[25] *Id.*

Courts employ an additional step when the statute forming the basis of a defendant's prior conviction is "divisible," meaning that it provides "elements in the alternative, and thereby define[s] multiple crimes."[26] Under this "modified categorical approach," the sentencing court looks beyond the statute of conviction to a restricted set of documents—such as the charging document, plea agreement, and transcript of the plea colloquy[27]—"to identify the specific statutory offense that provided the basis for the prior conviction."[28] The court then compares those elements to the elements of the generic offense using the formal categorical approach.[29]

The determination of whether a statute is divisible turns on the distinction between "elements" and "means." A divisible statute sets out one or more elements in the alternative, often using disjunctive language such as "or" to list

---

[26] *Mathis*, 579 U.S. at 503; *see also Descamps*, 570 U.S. at 260 (explaining that the modified categorical approach "helps effectuate the categorical analysis when a divisible statute, listing potential offense elements in the alternative, renders opaque which element played a part in the defendant's conviction").

[27] *See Shepard v. United States*, 544 U.S. 13, 26 (2005) (listing the charging document, plea agreement, plea colloquy transcript, or other comparable judicial record); *McCants*, 952 F.3d at 427 (listing the charging document, guilty plea allocution, jury instructions, and judgment of conviction).

[28] *United States v. Ramos*, 892 F.3d 599, 606 (3d Cir. 2018).

[29] *Mathis*, 579 U.S. at 505-06; *United States v. Abdullah*, 905 F.3d 739, 744 (3d Cir. 2018).

multiple, alternative criminal offenses.[30] "Each alternative offense listed in a divisible statute must be proven beyond a reasonable doubt to sustain a conviction."[31] In contrast, "means" are "merely the factual ways that a criminal offense can be committed" that "need neither be found by a jury nor admitted by a defendant."[32]

## A. Specific Offense

The New Jersey aggravated assault statute under which Brasby was convicted, N.J. Stat. Ann. § 2C:12-1(b)(1), provided:

> A person is guilty of aggravated assault if he . . . [a]ttempts to cause serious bodily injury to another, or causes such injury purposely or knowingly or under circumstances manifesting extreme indifference to the value of human life recklessly causes such injury . . . .

The statute is divisible into two separate offenses: (1) *attempted* aggravated assault ("[a]ttempt[ing] to cause serious bodily injury to another"), and (2) aggravated assault ("caus[ing] such injury purposely or knowingly or under circumstances manifesting extreme indifference to the value of human life recklessly causes such injury").[33] Because the statute defines more than one offense, we apply the modified

---

[30] *Mathis*, 579 U.S. at 506, 513.
[31] *Ramos*, 892 F.3d at 608.
[32] *Id.* (quoting *Mathis*, 579 U.S. at 504).
[33] *See* New Jersey Model Criminal Jury Charges, Aggravated Assault – Serious Bodily Injury, at p.3 n.2 (2012).

categorical approach to determine the specific subsection and offense under which Brasby was convicted. Although the parties do not provide court documents for Brasby's aggravated assault conviction in New Jersey state court, reliance on the Presentence Investigation Report ("PSR") in the subsequent federal offense is permitted to establish the basis of a defendant's prior conviction where the defendant does not object to its factual findings.[34] Brasby's PSR shows that he was convicted under the second subsection for actually causing serious bodily injury to another, rather than attempting to cause such injury. Neither party disputes this.

The second subsection of § 2C:12-1(b)(1) lists three *mens rea*: (1) purposely, (2) knowingly, or (3) recklessly "under circumstances manifesting extreme indifference to the value of human life." *Mens rea* generally is one element of an offense, and the specific *mens rea* is simply a means.[35] Indeed, the New Jersey Model Criminal Jury Instructions and the New Jersey Practice Series on Criminal Law list two elements to

---

[34] *See United States v. Siegel*, 477 F.3d 87, 93 (3d Cir. 2007); *see also Abdullah*, 905 F.3d at 746 (identifying the basis of a prior conviction upon agreement of the parties and "as stated in the PSR without objection, confirmed by the judgment of conviction, and admitted by [the defendant] through counsel").
[35] *See Cabeda v. Att'y Gen.*, 971 F.3d 165, 174 n.9 (3d Cir. 2020) (holding that three types of *mens rea* listed in the disjunctive in a Pennsylvania law are "alternate means rather than elements"); *see also Hoxworth*, 11 F.4th at 696 (noting that the Texas aggravated assault statute "defines a single, indivisible offense that can be committed under *any* of three mental states—intentionally, knowingly, or recklessly" (emphasis in original)).

convict someone under § 2C:12-1(b)(1) for aggravated assault: (1) causing serious bodily injury (i.e., the *actus reus*), and (2) acting with one of the three listed *mens rea*.[36] In our analysis under the categorical approach, we review the least culpable *mens rea* of the statute of conviction.[37] In this case, the least culpable *mens rea* is recklessly "under circumstances manifesting extreme indifference to the value of human life." It is undisputed that Brasby was convicted under this *mens rea*.

---

[36] New Jersey Model Criminal Jury Charges, Aggravated Assault – Serious Bodily Injury, at p.1 (2012); 33 N.J. Prac., Criminal Law § 5:08 (5th ed. 2012).

[37] *See Esquivel-Quintana v. Sessions*, 137 S. Ct. 1562, 1568 (2017) (explaining that a petitioner's state conviction is an "aggravated felony" "only if the least of the acts criminalized by the state statute falls within the generic federal definition"); *Quinnones*, 16 F.4th at 418–19 ("[W]e next look at that offense's elements to 'ascertain the least culpable conduct hypothetically necessary to sustain a conviction.'" (quoting *United States v. Dahl*, 833 F.3d 345, 350 (3d Cir. 2016))).

Under New Jersey law:

A person acts <u>recklessly</u> with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.[38]

The New Jersey Model Criminal Jury Charges and the New Jersey Practice Series on Criminal Law explain that the phrase "under circumstances manifesting extreme indifference to the value of human life" is not part of the recklessness *mens rea* for aggravated assault:

---

[38] N.J. Stat. Ann. § 2C:2-2(b)(3) (emphasis added).

16

The phrase "under circumstances manifesting extreme indifference to the value of human life" does not focus on the state of mind of the actor, but rather on the circumstances under which [the jury] find[s] that he/she acted. If, in light of all the evidence, [the jury] find[s] that the conduct of the defendant(s) resulted in a probability as opposed to a mere possibility of serious bodily injury, then [the jury] may find that (he/she/they) acted under circumstances manifesting extreme indifference to the value of human life.[39]

Recklessness "under circumstances manifesting extreme indifference to the value of human life" therefore elevates a reckless action due to the probability that serious bodily injury will result, as opposed to a mere possibility of such injury.[40] The New Jersey Supreme Court recognizes that recklessness

---

[39] New Jersey Model Criminal Jury Charges, Aggravated Assault – Serious Bodily Injury, at p.2 (2012); 33 N.J. Prac., Criminal Law § 5:08 (5th ed. 2012).

[40] *Cf. State v. Galicia*, 45 A.3d 310, 318 (N.J. 2012) (explaining that the difference between reckless manslaughter (under N.J. Stat. Ann. § 2C:11-4(b)(1)) and aggravated manslaughter for "recklessly caus[ing] death under circumstances manifesting extreme indifference to human life" (under N.J. Stat. Ann. § 2C:11-4(a)(1)) "turns on the degree of probability that the death will result from the defendant's conduct" since reckless manslaughter is "when it is only possible that death will result," while aggravated manslaughter for "recklessly caus[ing] death under circumstances manifesting extreme indifference to human life" is "[w]hen it is probable that death will result").

under circumstances manifesting extreme indifference to human life is "a more stringent standard of reckless conduct."[41] The U.S. Supreme Court and the Model Penal Code similarly recognize "extreme recklessness" as a higher degree of recklessness.[42] The parties here do not dispute that the applicable *mens rea* for our review is extreme indifference recklessness.

The elements of Brasby's statute of conviction—aggravated assault under N.J. Stat. Ann. § 2C:12-1(b)(1)—are therefore, causing serious bodily injury to another at least recklessly under circumstances manifesting extreme indifference to the value of human life.

## B. Generic Offense

As previously stated, an offense qualifies as a crime of violence under the enumerated offenses clause of U.S.S.G. § 4B1.2(a) if the elements of the specific offense for which a defendant was convicted are the same as or narrower than the elements of the "generic" offense.[43] To identify the elements of the generic offense, courts examine the Model Penal Code, learned treatises, and state laws.[44]

---

[41] *See State v. Bakka*, 826 A.2d 604, 613 (N.J. 2003).

[42] *See Borden*, 141 S. Ct. at 1825 n.4; Am. Law Inst., Model Penal Code Commentaries, Part II § 210.2, p.22, 25 (1980) (distinguishing ordinary recklessness as less than extreme recklessness).

[43] *See Descamps*, 570 U.S. at 257.

[44] *Graves*, 877 F.3d at 502; *see also Taylor*, 495 U.S. at 598–600; *McCants*, 952 F.3d at 428.

*Model Penal Code:*  The Model Penal Code ("MPC") is "an ideal starting point" for the categorical approach.[45]  Under MPC § 211.1(2)(a), "[a] person is guilty of aggravated assault if he . . . attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life."  Section 211.1(2)(a) "therefore reserves major felony sanctions for assaults resulting in serious bodily injury where the actor was at least reckless 'under circumstances manifesting extreme indifference to the value of human life.'"[46]  This definition "approximates the definition of 'aggravated assault' used by several states that have consolidated the crimes of assault and battery."[47]  In fact, the language of § 211.1(2)(a) is nearly identical to the language in N.J. Stat. Ann. § 2C:12-1(b)(1).[48]  Aggravated assault is also a

---

[45] *Marrero*, 743 F.3d at 400; *see also Schneider*, 905 F.3d at 1093 ("[T]he relevant Model Penal Code provision, if widely adopted, can reflect the elements of the generic offense.").

[46] Am. Law Inst., Model Penal Code & Commentaries, Part II § 211.1, p.189 (1980).

[47] *United States v. McFalls*, 592 F.3d 707, 717 (6th Cir. 2010).

[48] *Compare* Model Penal Code § 211.1(2)(a) ("A person is guilty of aggravated assault if he . . . attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly or <u>recklessly under circumstances manifesting extreme indifference to the value of human life</u> . . . ." (emphasis added)), *with* N.J. Stat. Ann. § 2C:12-1(b)(1) ("A person is guilty of aggravated assault if he . . . [a]ttempts to cause serious bodily injury to another, or causes such injury purposely or knowingly or <u>under circumstances manifesting extreme indifference to the value of human life recklessly causes such injury</u> . . . ." (emphasis added)).

second-degree felony under both the Model Penal Code and the New Jersey statute.[49] The Model Penal Code therefore supports the generic offense of aggravated assault as conduct causing serious bodily injury to another at least recklessly under circumstances manifesting extreme indifference to the value of human life.

*Learned Treatises:* The Government cites two treatises to support its position that the generic offense of aggravated assault requires at least recklessness "under circumstances manifesting extreme indifference to the value of human life." Just one of those treaties actually goes its way. The first treatise, *Wharton's Criminal Law*, states: "An assault may . . . be aggravated when the defendant's conduct shows extreme indifference to life."[50] It also notes that when the assault results in bodily injury, the defendant's recklessness and the seriousness of the victim's injury are typical aggravators. So, this treatise supports the Government.[51] The second treatise, *Substantive Criminal Law*, goes the other way. It discusses "extreme indifference to the value of human life" with respect to battery, and notes that some jurisdictions "appear not to require [a] higher mental state" like purpose or knowledge for a battery involving serious bodily injury.[52] But it also describes this as the minority approach. It says that the majority of states require knowledge or intent.[53] So it goes

---

[49] Model Penal Code § 211.1(2)(a).

[50] 2 Francis Wharton, Crim. L. § 196 (15th ed., updated Aug. 2020); N.J. Stat. Ann § 2C:12-1(b).

[51] *Id.* § 198.

[52] *See* 2 Wayne R. LaFave, Subst. Crim. L. § 16.2(d) (3d ed., updated Oct. 2020) (citing *Schneider*, 905 F.3d 1088).

[53] *Id.*

against the Government. Yet this treatise is of little value to us here because it merely describes the states' various approaches.[54] We conduct our own multijurisdictional analysis below.

Breaking the tie, two other treatises support the Government's position. *Corpus Juris Secundum* explains that aggravated assault generally requires an intentional infliction of injury and "the intention to injure cannot be satisfied by a showing of . . . mere recklessness."[55] However, the treatise recognizes that "a person can commit aggravated assault recklessly" under some state statutes.[56] And it notes that an assault causing injury can be aggravated even if the defendant has no "specific intent to inflict the injury."[57] In addition, according to *American Jurisprudence*, "[a]ggravated assault usually consists of intentionally or recklessly causing great or serious bodily harm to another."[58] This includes "recklessness to the extent that almost assures that injury or death will ensue" or "blatant disregard for the risk to the victim's life."[59] The treatise specifies that a person cannot commit aggravated assault with "ordinary recklessness."[60] These treatises provide further support that the generic definition of aggravated assault requires at least a heightened degree of recklessness.

---

[54] *Id.*

[55] 6A C.J.S. § 88 (updated Oct. 2021).

[56] *See id.*

[57] *Id.* § 96.

[58] 6 Am. Jur. 2d § 30 (updated Aug. 2021).

[59] *Id.* § 30 n.1.

[60] *Id.* § 30.

*Comparison of State Laws:* This Court has previously held that "the most important factor in defining the generic version of an offense is the approach of the majority of state statutes defining the crime."[61] However, the Supreme Court recently indicated in *Esquivel-Quintana* that "this sort of multijurisdictional analysis . . . is not required by the categorical approach" but may nonetheless offer "useful context" to "shed light on the 'common understanding and meaning' of the federal provision being interpreted."[62] We therefore hold that multijurisdictional surveys are not required under the categorical approach, though they will still often be helpful in determining the generic definition of an offense.

Yet some approaches to multijurisdictional surveys can be problematic. Federal courts of appeals that have conducted surveys of state laws have reached inconsistent conclusions on which jurisdictions require at least extreme indifference recklessness to sustain a conviction for aggravated assault. This inconsistency appears to, in part, result from an attempt by our sister circuit courts to review state court statutes without regard to labels.[63] That approach, however, risks bootstrapping.

---

[61] *Graves*, 877 F.3d at 503–04.

[62] *Esquivel-Quintana*, 137 S. Ct. at 1571 n.3 (quoting *Perrin v. United States*, 444 U.S. 37, 45 (1979)); *see also Ho Sang Yim v. Barr*, 972 F.3d 1069, 1078 n.2 (9th Cir. 2020) ("To the extent we have implied that the categorical approach requires a multi-jurisdictional analysis, that guidance has been superseded by *Esquivel-Quintana*.") (internal citation omitted).

[63] *McFalls*, 592 F.3d at 716–17 ("Defining aggravated assault generically is particularly difficult because many states define assault in terms of degrees rather than with the terms simple or

For example, in *Schneider* the Eighth Circuit considered whether "willful" aggravated assault under North Dakota law qualifies as a crime of violence under the U.S. Sentencing Guidelines. The Court looked to aggravated assault "or an equivalent crime" in conducting its survey.[64] By doing so, the court was forced to assume the elements of aggravated assault before reaching a generic definition of the offense. The Eighth Circuit determined that, in 32 jurisdictions "a conviction for aggravated assault or an equivalent crime requires a person to cause serious bodily injury with at least an extreme indifference to human life."[65] The group of 32 jurisdictions included 14 jurisdictions that require at least extreme indifference recklessness, plus 18 jurisdictions that require a knowledge or purposeful *mens rea*.[66] Based on this multijurisdictional analysis, the Eighth Circuit concluded that, "to the extent that there is a consensus, ordinary recklessness is not an element of aggravated assault."[67]

---

aggravated, and because some states still retain the common law distinction between assault and battery." (internal citation omitted)).

[64] *Schneider*, 905 F.3d at 1093.

[65] *Id.* at 1094, 1094 n.3.

[66] *Schneider*, 905 F.3d at 1094 & n.3.

[67] *Id.* at 1095. The Eighth Circuit identified Louisiana as the only outlier since the state defines "aggravated assault" as a simple assault that is committed "with a dangerous weapon" or against a select group of victims but does not specifically require serious bodily injury. *Id.* at 1094 n.2 (citing La. Stat. Ann. §§ 14:37–14:37.7).

Applying a similar approach in *Garcia-Jimenez*,[68] the Ninth Circuit evaluated the same New Jersey statute for aggravated assault at issue in this case, N.J. Stat. Ann. § 2C:12–1(b)(1), and identified 17 jurisdictions that "punish aggravated assaults committed with extreme indifference recklessness (or a lesser level of mens rea)."[69] The Court concluded that "a substantial majority of U.S. jurisdictions require more than extreme indifference recklessness to commit aggravated assault" because 34 jurisdictions "do not punish as aggravated assault offenses committed with only extreme indifference recklessness."[70]

We believe that this approach puts the cart before the horse and decline to follow it. Indeed, these surveys do not agree on which jurisdictions fall into which category of *mens rea*, nor do they agree on which statute in each jurisdiction is the relevant statute for aggravated assault, or the equivalent offense. These inconsistencies underscore the difficulty of finding consensus on the generic definition of aggravated assault across all jurisdictions. Thus, we conducted our own multijurisdictional analysis employing a two-step approach.

First, we applied a label-based approach to determine whether the generic definition as gleaned from the Model Penal Code and treatises "roughly correspond[s] to the definition[s] of [aggravated assault] in a majority of the States' criminal

---

[68] *Garcia-Jimenez*, 807 F.3d at 1085 n.5 ("select[ing] the statutes or specific provisions that most closely mirror the aggravated assault provision under [New Jersey law]").
[69] *Id.* at 1086, 1086 n.7.
[70] *Id.* at 1085–86, 1085 n.6.

codes."[71]  Thus, we began by reviewing what state laws that use the phrase "aggravated assault" have in common with each other and with the definitions of the offense in the Model Penal Code and learned treatises.[72]

At this step in our methodology, we identified the jurisdictions with felony statutes expressly labeled "aggravated assault."  Once we identified the relevant statutes, we determined which statutes would be satisfied by the *actus reus*—serious bodily injury—and *mens rea*—extreme indifference recklessness—of the New Jersey statute at issue. For statutes that include a reckless *mens rea* alongside the phrase "under circumstances manifesting extreme indifference to the value of human life," or a similar phrase, we construed the *mens rea* to be extreme indifference recklessness. Otherwise, where the statute includes a reckless *mens rea* without this phrase, we construed the *mens rea* to be ordinary recklessness.  For statutes that include this phrase alongside a knowledge or purpose *mens rea*, we did not consider the phrase to serve any purpose with respect to our analysis.

---

[71] *Taylor*, 495 U.S. at 589.

[72] Although the Supreme Court has cautioned against relying on state labels, *see Mathis*, 579 U.S. at 509; *Taylor*, 495 U.S. at 592, those warnings concern the misguided reliance on the labels states assign to statutes of conviction and do not relate to the use of state labels when deducing the elements of the generic offense.

Based on our independent analysis, we conclude that 24 jurisdictions have a felony labeled "aggravated assault."[73]  Of those 24 jurisdictions,[74] we conclude that 14 punish causing serious bodily injury (or the virtually identical "serious physical injury," "great bodily injury," or "serious physical harm") with a *mens rea* of extreme indifference recklessness

---

[73] Ariz. Rev. Stat. Ann. § 13-1204; Ark. Code Ann. § 5-13-204; D.C. Code Ann. § 22-404.01; Fla. Stat. Ann. § 784.021; Ga. Code Ann. § 16-5-21; Idaho Code Ann. § 18-905; 720 Ill. Comp. Stat. Ann. 5/12-2; Kan. Stat. Ann. § 21-5412; Me. Rev. Stat. tit. 17-A, § 208; Miss. Code. Ann. § 97-3-7; Mont. Code Ann. § 45-5-202; N.J. Stat. Ann. § 2C:12-1(b); N.M. Stat. Ann. § 30-3-2; N.D. Cent. Code Ann. § 12.1-17-02; Ohio Rev. Code Ann. § 2903.12; Okla. Stat. Ann. tit. 21, § 646 (aggravated assault and battery); 18 Pa. Stat. and Cons. Stat. Ann. § 2702; S.C. Code Ann. § 16-3-600(B)(1) (assault and battery of a high and aggravated nature); S.D. Codified Laws § 22-18-1.1; Tenn. Code Ann. § 39-13-102; Tex. Penal Code Ann. § 22.02; Utah Code Ann. § 76-5-103; Vt. Stat. Ann. tit. 13, § 1024; Wyo. Stat. Ann. § 6-2-502 (aggravated assault and battery).

[74] Although it is titled "aggravated assault," we do not consider La. Stat. § 14:37 because the maximum punishment is six months imprisonment.  *See* La. Stat. §§ 14:37(A), (B).

or less.[75] We therefore conclude that the majority of states with aggravated assault statutes allow for a conviction based on causing serious bodily injury to another either recklessly or recklessly under circumstances manifesting extreme indifference to the value of human life.

In some cases, the MPC, treatises, and label-based multijurisdictional survey will agree, and the analysis will end there. But when many states do not use the label and there is meaningful disagreement on an element of the offense among the label-based state statutes or between the label-based survey and the other sources, we may move on to a second step of the multijurisdictional analysis for further clarification. Here, because of the disagreement as to the least culpable mental state for the generic definition of aggravated assault, it is beneficial to move on to step two.

At step two, we determine the elements clearly agreed-upon between the Model Penal Code, learned treatises, and

---

[75] Ariz. Rev. Stat. Ann. §§ 13-1203(A)(1), 13-1204(A)(1); Me. Rev. Stat. tit. 17-A, § 208(1)(A); Miss. Code. Ann. § 97-3-7(2)(a)(i); N.J. Stat. Ann. § 2C:12-1(b)(1); N.D. Cent. Code Ann. §§ 12.1-02-02(1)(e); 12.1-17-02(1)(a); Okla. Stat. Ann. tit. 21, §§ 641 646(A)(1); *State v. Madden*, 562 P.2d 1177, 1180 (Okla. Crim. App. 1977); 18 Pa. Stat. and Cons. Stat. Ann. § 2702(a)(1); S.C. Code Ann. § 16-3-600(B)(1)(a); *State v. Fennell*, 531 S.E.2d 512, 517 (S.C. 2000); S.D. Codified Laws § 22-18-1.1(1); Tenn. Code Ann. § 39-13-102(a)(1)(B)(i); Tex. Penal Code Ann. §§ 22.01(a)(1), 22.02(a)(1); Utah Code Ann. § 76-5-103(2)(a)(iii), 76-2-102; Vt. Stat. Ann. tit. 13, § 1024(a)(1); Wyo. Stat. Ann. § 6-2-502(a)(i).

state statutes labeled "aggravated assault," and hold these elements constant. We then examine all state statutes that reflect the elements we are holding constant, regardless of labels. In approaching the analysis in this manner, we can focus at the second step on the element for which there is meaningful disagreement. Here, we held the agreed-upon elements—feloniously causing substantial bodily injury with *some mens rea*—constant to search for the majority approach to the uncertain element: level of *mens rea*.[76] We looked at state statutes, regardless of labels, to find the number of states that punish, as a felony, causing serious bodily injury with a mental state of extreme indifference recklessness or less.

We already identified 14 states that punish causing serious bodily injury (or the virtually identical "serious physical injury," "great bodily injury," or "serious physical harm") with a *mens rea* of extreme indifference recklessness or less at step one of the multijurisdictional survey. Looking at state statutes that do not use the phrase "aggravated assault," there are 17 additional jurisdictions that punish this conduct as a felony.[77] Adding these together, at least 31 jurisdictions

---

[76] We limit our analysis to felonies because U.S.S.G. § 4B1.2(a) defines "crime of violence" as any offense under federal or state law that is "punishable by imprisonment of a term exceeding one year." U.S.S.G. § 4B1.2(a).

[77] Alaska Stat. § 11.41.210(a)(2); Ark. Code Ann. § 5-13-201(a)(3); Cal. Penal Code §§ 242, 243(d); *People v. Colantuono*, 865 P.2d 704, 713 (Cal. 1994); D.C. Code Ann. § 22-404(a)(2); Del. Code Ann. tit. 11, § 612(a)(1); Haw. Rev. Stat. § 707-711(1)(b); 720 Ill. Comp. Stat. § 5/12-5(a)(2); Iowa Code §§ 708.1, 708.2(4); Kan. Stat. Ann. § 21-5413(b)(2)(A); Mass. Gen. Laws ch. 265, § 13A(b)(i); *Commonwealth v.*

punish, as a felony, causing serious bodily injury with a mental state of extreme indifference recklessness or less. There are just 14 jurisdictions that clearly require a mental state greater than extreme indifference recklessness.[78] The laws in six jurisdictions are harder to place.[79] We do not need to do so, however, because inclusion of these jurisdictions would not change the result: the majority of jurisdictions allow for a conviction based on causing serious bodily injury to another

*Porro*, 939 N.E.2d 1157, 1162 (Mass. 2010); Minn. Stat. § 609.02(10), 609.221(1); *State v. Dorn*, 887 N.W.2d 826, 830–31 (Minn. 2016); Mo. Rev. Stat. § 565.052(1)(3); N.H. Rev. Stat. Ann. § 631:2(I)(a); N.C. Gen. Stat. § 14-32.4(a); *United States v. Simmons*, 917 F.3d 312, 318–19 (4th Cir. 2019); *State v. Rushing*, 836 S.E.2d 262, 265 (N.C. App. 2019); Or. Rev. Stat. § 163.165(1)(b); 11 R.I. Gen. Laws § 11-5-2.2; Wis. Stat. § 940.23.

[78] Ala. Code § 13A-6-21(a)(1); Conn. Gen. Stat. Ann. § 53a-60; Ga. Code § 16-5-24(a); *Hillsman v. State*, 802 S.E.2d 7, 10 (Ga. Ct. App. 2017); Idaho Code §§ 18-903, 18-907(1)(a); Ky. Rev. Stat. Ann. § 508.020(1)(a); La. Stat. Ann. § 14.34.1(A); Md. Code Ann., Crim. Law § 3-202(b)(1); Mich. Comp. Laws § 750.84(1)(a); Mont. Code Ann. § 45-5-202; Neb. Rev. Stat. § 28-308(1); N.Y. Penal Law § 120.05(1); Ohio Rev. Code Ann. § 2903.11(A)(1); Va. Code Ann. §§ 18.2-51, 18.2-51.2(A); W. Va. Code § 61-2-9(a).

[79] Colo. Rev. Stat. § 18-3-203(1)(g); Fla. Stat. § 784.03(1)(a), 784.041(1)(b); *United States v. Vail-Bailon*, 868 F.3d 1293, 1299 (11th Cir. 2017); Ind. Code § 35-42-2-1(g)(1); Nev. Rev. Stat. § 200.481(1)(a), (2)(b); N.M. Stat. Ann. §§ 30-3-5(A), (C); Wash. Rev. Code §§ 9A.36.011(1)(d), 9A.36.021(1)(a), 9A.36.031(f).

either recklessly or recklessly under circumstances manifesting extreme indifference to the value of human life.

As previously stated, a multijurisdictional survey is not required under the categorical approach. Nevertheless, courts should continue to conduct these surveys where, as here, they provide useful context for how different jurisdictions in the United States define the offense. Our two-step approach is consistent with *Esquivel-Quintana*. There, the Court was interpreting the phrase "sexual abuse of a minor," and the petitioner had "concede[d] that sexual abuse of a minor under the INA includes some statutory rape offenses."[80] So both sides agreed that the "sexual abuse" element encompassed statutory rape, and the only dispute was over the meaning of "minor." Holding "sexual abuse" constant at statutory rape, then, the Court conducted a multijurisdictional survey of statutory-rape laws based solely on the age of the participants.[81] That survey helped define "minor" by identifying the majority age of consent. Thus, multijurisdictional analysis may vary with context, but it is always driven by the categorical approach's goal: defining the generic offense. We consider our

---

[80] *Esquivel-Quintana*, 137 S. Ct. at 1568.

[81] *See Id.* at 1569 ("Accordingly, to qualify as sexual abuse of a minor, the statute of conviction must prohibit certain sexual acts based at least in part on the age of the victim.").

multijurisdictional survey alongside our review of the Model Penal Code and treatises.[82]

## C. Categorical Matching

Brasby's prior conviction for New Jersey aggravated assault under § 2C:12-1(b)(1) qualifies as a crime of violence under the enumerated offenses clause of U.S.S.G. § 4B1.2(a) only if "the statutory definition of the prior conviction 'substantially corresponds' to the generic definition of the offense."[83] As previously discussed, the elements of Brasby's statute of conviction for aggravated assault under N.J. Stat. Ann. § 2C:12-1(b)(1) are causing serious bodily injury to another with at least extreme indifference recklessness. According to the Model Penal Code and the treatises that we reviewed, the generic offense of aggravated assault involves causing serious bodily injury to another with a heightened degree of recklessness, namely extreme indifference

---

[82] In addition to the sources reviewed above, the Government contends that the U.S. Sentencing Guidelines also provide the definition of "aggravated assault." The Sentencing Guidelines provide some evidence that serious bodily injury combined with extreme indifference recklessness suffices for the generic definition of "aggravated assault." In particular, U.S.S.G. § 2A2.2 defines aggravated assault as "a felonious assault that involved . . . serious bodily injury." Although the Guidelines do not provide a *mens rea*, as our sister circuit court has reasonably concluded based upon cross-referenced statutes within the Guidelines, the definition requires only generalized intent. *See, e.g., United States v. Two Eagle*, 318 F.3d 785, 790-91 (8th Cir. 2003).

[83] *Marrero*, 743 F.3d at 400 (quoting *Taylor*, 495 U.S. at 602).

recklessness. Our two-step multijurisdictional survey further shows that the majority of states allow for a conviction based on causing serious bodily injury to another with a *mens rea* of extreme indifference recklessness.

Based on these sources, Brasby's conviction for aggravated assault under N.J. Stat. Ann. § 2C:12-1(b)(1) has the same elements as the generic offense of aggravated assault. Brasby's prior conviction is a categorical match and may serve as a predicate offense for a sentencing enhancement under the Sentencing Guidelines for a crime of violence under the enumerated offenses clause of U.S.S.G. § 4B1.2(a). We therefore hold that the District Court did not err in applying the sentencing enhancement under U.S.S.G. § 2K2.l(a)(4)(A) based on Brasby's conviction for aggravated assault qualifying as a crime of violence under U.S.S.G. § 4B1.2(a)(2).

## CONCLUSION

For the foregoing reasons, we will affirm Brasby's sentence and conviction in the District Court's judgment.[84]

---

[84] Brasby raises additional issues on appeal, including whether his conviction for aggravated assault is a crime of violence under the elements clause of U.S.S.G. § 4B1.2(a), whether the Government waived this argument, and whether the District Court committed harmless error in calculating his Guidelines range and sentence. Since we will affirm Brasby's sentence based on our analysis of the enumerated offenses clause of U.S.S.G. § 4B1.2(a), we need not decide these additional issues.